## WILLIAM M. POWERS v. JACOB E. HOUSE.

[FILED JULY 1, 1892.]

Review. *Held*, That there is no material error in the record.

ERROR to the district court for Douglas county. Tried below before DOANE, J.

*A. C. Wakeley*, for plaintiff in error.

*A. N. Ferguson*, and *Winfield S. Strawn*, contra.

MAXWELL, CH. J.

The plaintiff in the suit below was Jacob E. House. The defendants were George R. Scougal, Martin P. Ohlman, William M. Powers, Miles T. Wooley, and F. M. Ziebach, of whom Powers only was served. The plaintiff House is a civil engineer, and resides in the city of Omaha. The defendants constituted a committee appointed at a meeting of the citizens of Yankton, Dakota, and resided in Yankton. This committee was appointed for the purpose of supervising and taking charge of a survey of a proposed line of railroad from Yankton to Sioux Falls, in the then territory of Dakota.

The petition alleges, in substance, the employment of the plaintiff by this committee at a salary of $200 per month and expenses; that the plaintiff commenced work about

12

September 23, 1887, and continued in it until the middle
of November, 1887; that thereby there became due him
$400 for his services; that his fares and expenses incurred
in the prosecution of the work amounted to $91.85; that
he was paid upon account $200, and that there is due him
$291.85 with interest.

The answer upon behalf of Mr. Powers, the only de-
fendant upon whom service was had, sets up the following
defenses:

"First—That the plaintiff House was hired by the
committee, to be paid at the rate of $200 per month, the
plaintiff agreeing to find and run a good practicable line
for the proposed road, and also, in consideration of being
allowed to be absent from the field of operations when not
needed, he would at all other times be present for the car-
rying on of the work, and would devote such time, atten-
tion, and skill to the making of the survey as might be
necessary and requisite; that the plaintiff entered upon the
prosecution of his work September 26, 1887, and upon
November 2, 1887, was notified by the committee that his
services were no longer needed."

The answer then sets up the law of Dakota relating to
the limited obligation of a party acting as agent.

As a further defense and as a counter-claim it is alleged
in answer that the plaintiff House was frequently, for days
together, absent from the field of operations on the survey
when his assistance and skill were needed for the proper
carrying on of the work; that the plaintiff so negligently
and carelessly did his work that it was of no value what-
ever; that the line projected by the plaintiff was never
used, and that the amount expended in the survey, to-wit,
over $800, was lost to the defendants, and that the entire
work had to be done over at great expense to the defendants.

In reply the plaintiff denies that he was hired in the city
of Yankton, but insists that the contract was made in the
city of Omaha by one J. H. Teller, representing the com-

mittee.    The plaintiff also denies the allegations of the answer, setting up the Dakota statute as to the liability of agents.    The plaintiff also denies that he negligently or unskillfully performed the work, or that the defendants have suffered damages to the extent of $800, or any other sum.    The plaintiff then sets up that the line that he was hired to run was only a preliminary line, and if not used by the defendants it was not his fault.

On the trial of the cause the jury returned a verdict in favor of House for the sum of $327, upon which judgment was rendered.

The testimony tends to show the following in regard to the contract between House and the defendants.  · The citizens of Yankton had for some time been desirous of building a railroad from the city of Yankton, Dakota, to the city of Sioux Falls, Dakota, a distance of about seventy miles.    With this end in view, a public meeting of the citizens of Yankton was held, money was raised by subscription, and a committee comprising five of the representative citizens of that place was appointed.    The duty of this committee was to provide for a survey of the proposed railroad and to disburse the funds collected at the meeting for carrying on the project.    The country which it was proposed the new· railroad should traverse between the points spoken of was, in part, rough and hilly, and presented in places points of difficulty as to grade, and in general was of such a nature as to require the skill and experience of an expert civil engineer ; that one of the principal inducements to the making of the proposed road lay in the fact that it was to be adopted and used by the St. Paul, Minneapolis & Manitoba Railroad Company.    To· meet the requirements of the latter road it was necessary that the new road should have no grades exceeding thirty feet to the mile.  · For these reasons the services of an engineer skilled in the location of a railroad were absolutely necessary.    At the request of the committee and in fact constituting a member of

Powers v. House.

it, Mr. J. H. Teller, mayor of the city, was deputized to go to Omaha, ascertain whether he could procure an engineer competent for the work proposed, acquaint him with the salient points to be obtained, ascertain the terms upon which the work could be done, and report the result of his investigations to the committee at Yankton. In the performance of this, Mr. Teller came to Omaha and consulted two engineers, one of whom was Mr. House. He acquainted House with the object of his visit, told him that the committee having the matter in charge had sent him to procure a locating engineer, that the road would be adopted by the Manitoba Railroad Company, and that its grades must not exceed thirty feet to the mile. The terms of payment were discussed. The terms proposed by House were $200 a month for such portion of his time as he might actually be needed in the field. House explained to Teller that upon the level prairie no locating engineer would be needed, and that he thought it would be practicable to run the survey in the manner indicated; that is, House only to be in the field a portion of the time, and to be allowed to return to Omaha when not actually needed on the line. House explained that were he to give his entire time to the work he would charge $25 per day, but if he gave only divided time to the work he would undertake it for $200 per month. Mr. Teller inquired of Mr. House, what experience in general he had had in the location of railroads. Mr. Teller informed Mr. House that he was not authorized to close the contract but would return to Yankton, report their conversation to the committee, and if he was wanted upon the terms indicated, to-wit, $200 per month and divided time, he would notify him. Mr. Teller returned to Yankton and submitted to the committee the proposition made by House, the committee accepted it, and Mr. Teller was directed to so notify Mr. House, which he did. The letter is set out in the record and need not be further noticed. It is unnecessary to review the testimony at length.

The defendant in error did not guarantee a line whose grade should not exceed thirty feet to the mile, and there is no proof that such a line could be obtained. He seems to have done all that was required of him as far as he was able. Even if we should hold that the contract was made in Dakota, still it would not alter the rights of the parties, as there seems to be no proof that the plaintiff in error acted as agent for any one in this transaction. Upon the whole case there is no material error in the record and the judgment is

AFFIRMED.

THE other judges concur.